UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | NO. CR-05-2123-WFN-1 |
| ) | |
| -vs- ) | ORDER |
| ) | |
| GABRIEL SANCHEZ-LUNA, ) | |
| Defendant. ) | |

A first pretrial conference and motion hearing was held via video-conference on May 21, 2007. The Court was present in Spokane; all other participants were present in Yakima, including the Defendant, who was in custody, and represented by Kristine Olmstead; Assistant United States Attorney Gregory Shogren represented the Government. The Defendant speaks fluent English and did not require the assistance of an interpreter.

The Court heard argument on the Defendant's Motion to Dismiss, filed April 17, 2007 (Ct. Rec. 40). The Court took the Motion under advisement. The Government was given the opportunity to file a brief response to the Defendant's citation of *In Re Antonio Esposito,* 21 I. & N. Dec. 1 (BIA 1995). The Government's brief and Defendant's reply have been received. The Court has reviewed the file, considered the Motion and briefing on the Motion, as well as the oral arguments of counsel and is fully informed.[1] For the reasons stated below the Motion is granted.

---

[1] The Court will strike briefing by the Government (Ct. Rec. 54) that was not in compliance with Local Rules; it will also strike the Defendant's responsive brief (Ct. Rec. 55). which was filed with leave of Court, but was responsive only to the Government's supplement.

ORDER - 1

# I. BACKGROUND

The pertinent fact are undisputed and will be presented in summary chronologic order:

- April 11, 1988 - Defendant received temporary residency in the U.S.;
- September 26, 1989 - Defendant convicted of second degree burglary and sentenced to imprisonment for 90 days;
- December 1, 1990 - Defendant became a lawful permanent resident of the U.S.;[2]
- December 13, 1991- Defendant convicted of first degree robbery with a deadly weapon finding and sentenced to imprisonment for 60 months;
- July 14, 1994 - Defendant's deportation hearing held before Immigration Judge [IJ];
- March 1, 1995 - Defendant removed from the U.S.;
- July 29, 2005 - Defendant found in Yakima County; and
- November 9, 2005 - Defendant indicted in the Eastern District of Washington for being an alien in the U.S. after deportation in violation of 8 U.S.C. § 1326.

What occurred at the deportation hearing is also undisputed. The Defendant waived an interpreter and desired to represent himself, though the IJ was willing to continue the hearing if the Defendant wished to attempt to obtain an attorney. Defendant admitted his prior convictions of burglary and robbery and that the two crimes were separate from one another. These three facts were the basis for the legal ground upon which deportation was asserted to be proper, Section 241(a)(2)(A)(ii); 8 U.S.C. § 1251(a)(2)(A)(ii), "you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." Order to Show Cause and Notice of Hearing, Defendant's Memo-

---

[2] The Government points out that because of his prior conviction he should not have received permanent resident status, but admits that it is estopped from proceeding against the Defendant on that basis at this time.

ORDER - 2

randum, filed 4/17/07, Ct. Rec. 41, Exhibit F. The Order to Show Cause did not mention the gun finding related to the robbery. In the hearing the IJ said he was looking for any basis for relief and therefore asked questions about Defendant's marital status, his parent's immigration status, and the age of his child who was born in the U.S. The IJ was pursuing whether any of Defendant's family could immediately petition for a VISA for the Defendant. When that avenue was exhausted, the IJ said he was not aware of any relief from deportation. At two points in the hearing the IJ said "because of your convictions, the nature of them" and because of "these kinds of crime" deportation would be required and relief would not be available. At no point in the hearing did the IJ refer to the gun finding on the crime of robbery. Nor did he say "because of the nature of your robbery conviction." The IJ always implied that the lack of relief was based upon both convictions. The IJ ordered deportation and advised the Defendant of his right to appeal. The Defendant waived his appeal rights.

## II. DISCUSSION

Defendant argues that his Indictment must be dismissed because he was prejudiced by a due process violation that occurred during his underlying deportation proceeding. Specifically, the IJ failed to advise him of a possible basis of relief from deportation. The Government argues that the Defendant did not qualify for relief so there was no due process violation and no prejudice to the Defendant.

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez,* 133 F.3d 1194, 1197 (9th Cir. 1998), impliedly overruled on other grounds in *United States v. Ballesteros-Ruiz,* 319 F.3d 1101, 1105 (9th Cir. 2003). "If the defendant's deportation proceedings fail to provide this opportunity, the validity of the deportation may be collaterally attacked in the criminal proceeding." *Zarate-Martinez,* 133 F.3d at 1197. However, a collateral attack cannot be made if the defendant's waiver of his right to appeal the deportation order was valid, i.e.

ORDER - 3

considered and intelligent. *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir. 2000). The waiver of appeal made before an IJ will not be considered and intelligent if the IJ neglects to advise the person of something that rises to the level of a due process violation. *Id.* Here, Defendant may make a collateral attack on the validity of his deportation hearing because he alleges due process violations at that hearing. To succeed on such a collateral attack requires the Defendant to prove: "(1) his due process rights were violated by defects in his underlying deportation proceedings, and (2) he suffered prejudice as a result of the defects. *Id.* The Government bears the burden of proving that the alien was sufficiently advised of his rights. *Zarate-Martinez,* 133 F.3d at 1197. The Government must establish by clear and convincing evidence that the alien's waiver of his rights was considered and intelligent. *United States v. Pallares-Galan,* 359 F.3d 1088, 1097 (9th Cir. 2004).

<u>Defect in Proceedings.</u> A defendant's due process rights are violated if an IJ fails to advise the alien of potential grounds for relief. *Arrieta,* 224 F.3d at 1079. When the record "contains an inference that the petitioner is eligible for relief from deportation, ' the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.' " *Id.* at 1079, *quoting Moran- Enriquez v. INS,* 884 F.2d 420, 422-23 (9th Cir. 1989). The record contains such an inference when a person intimately familiar with immigration law would recognize a reasonable possibility that the alien may be eligible for relief. *Moran- Enriquez,* 884 F.2d at 423.

The remedy that Defendant asserts he should have been advised of is found in Section 212(c), 8 U.S.C. § 1182(c) (1994) part of the pre-AEDPA [Antiterrorism and Effective Death Penalty Act] and pre-IIRIRA [Illegal Immigration Reform and Immigrant Responsibility Act] law. An alien who had been convicted of crimes involving moral turpitude was excludable from admission to the United States. However, the statute gave the Attorney General the discretion to admit such an alien who had permanent resident status, and was returning from abroad, if the alien had lived in the U.S. for seven consecutive years. 8 U.S.C. § 1182(c)

ORDER - 4

1  (1994); *I.N.S. v. St. Cyr,* 533 U.S. 289, 293-295 (2001).  In addition, the alien must not have
2  been convicted of one or more aggravated felonies for which the person served at least five
3  years of imprisonment.  *St. Cyr,* 533 U.S. at 297.

4       Although the statute is specific to the alien admission to the United States context, it
5  has been interpreted by the Board of Immigration Appeals [BIA] to also apply in the alien
6  deportation context.  *Id.* at 295.  The important caveat is that it only applies in the deportation
7  context if the alien has been found "deportable under a charge of deportability for which
8  there is a comparable ground of excludability."  *In re Fidel Jimenez-Santillano,* 21 I. & N.
9  Dec. 567, 571 (BIA 1996); *Matter of Wadud,* 19 I. & N. Dec. 182, 185 (BIA 1984) (ground
10 for deportability charged must also be a ground for inadmissibility).  "If relief is granted, the
11 deportation proceeding is terminated and the alien remains a permanent resident."  *St. Cyr,*
12 533 U.S. at 295.

13      In sum, if the Defendant: (1) had permanent resident status; (2) had not served
14 five years or more on aggravated felony convictions; (3) had seven years of domicile;
15 and (4) was deported under a ground for which there is a comparable ground of excludability,
16 then he was eligible for discretionary relief from deportation and should have been so notified
17 by the IJ.

18     <u>Lawful Permanent Resident & No Imprisonment for Five Years or More.</u>  Here, the
19 Government appears to concede that the first two requirements for relief are satisfied: that the
20 Defendant had permanent resident status and had not served five years or more for aggravated
21 felony convictions.

22     <u>Seven years of Domicile</u>.  The Government does not dispute that the Defendant was
23 nine months short of having seven years of domicile at the time of the deportation hearing.
24 This is because the seven years of domicile begins when the alien became a temporary
25 resident, *Ortega de Robles v. I.N.S.,* 58 F.3d 1355, 1361 (9th Cir. 1995), which in this
26 case was April 11, 1988, and extends through the time in which an alien's administrative

ORDER - 5

appeal is pending. *Foroughi v. I.N.S.,* 60 F. 3d. 570, 572 (9th Cir. 1995). If Defendant had been told he might be eligible for relief from deportation and he appealed the deportation order it is quite possible that he would have satisfied the seven year requirement by the time the appeal was decided. The Defendant supports the likelihood of this outcome with cites to *United States v. Jimenez-Marmolejo,* 104 F.3d 1083, 1085-86 (9th Cir. 1996) (alien two months short of seven years domicile); *United States v. Ahumada-Aguilar*, 295 F.3d 943, 951 (9th Cir. 2002) (alien ten months short of seven years domicile). In *Ahumada-Aguilar*, the Court held that a competent attorney would have advised the alien to pursue an appeal to satisfy the seven years of domicile. *Id.* The Circuit did not decide the question that is before this Court which is whether it is the "duty of the IJ to inform a respondent that he may become eligible for a waiver of deportation during the substantial time required to pursue an appeal from the deportation order." *Id.* An IJ is supposed to advise an alien of a possible remedy if the record contains an inference that a person intimately familiar with immigration law would recognize as a reasonable possibility that the alien may be eligible for relief. *Moran-Enriquez,* 884 F.2d at 423. Defendant's short time of nine months to satisfy the seven year domicile requirement for relief would raise such an inference and lead to a conclusion that the IJ does have a duty to advise the alien of the possible relief he may be eligible for if he would appeal.

<u>Ground of Deportability and Comparable Ground of Excludability.</u> The crux of the parties' disagreement relates to this issue. The Government asserts that even though the ground for deportation of the Defendant was two crimes of moral turpitude, the fact that he had a gun finding made on his underlying robbery conviction means that there is no comparable statutory ground of excludability so Defendant was not eligible for relief. This argument has no basis in the cited case law. The case law states that the focus for comparison between deportability and excludability is on the ground of exclusion not the particular offense which forms the basis for that ground of exclusion or deportation. *In re Fidel*

*Jimenez-Santillano,* 21 I. & N. Dec. 567, 571 (BIA 1996); *In Re. Antonio Esposito,* 21 I. & N. Dec. 1 (BIA 1995) ("Section 212(c) of the Act Waives Grounds of Exclusion or Deportation, Not the Underlying Offenses") . In *Jimenez-Santillano* the Court stated:

> As we explained in Matter of Espositio, supra, at 11, "the relief provided by section 212(c) is waiver of a particular <u>ground</u> of exclusion or deportation, not a waiver of the particular offense which forms the basis for that ground of exclusion or deportation." Thus, our focus "is not whether the deportable alien's particular offense, in this case a conviction for a [document fraud and misuse offense], could form the basis for a ground of exclusion and therefore be waivable; rather, the focus is whether the ground of deportation against the alien has a comparable ground of exclusion."

*Jimenez-Santillano* , 21 I. & N. Dec. at 571(emphasis added in original).

There is no dispute that the legal ground for deportation for Defendant was Section 241(a)(2)(A)(ii) - "you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." Order to Show Cause and Notice of Hearing, Defendant's Memorandum, filed 4/17/07, Ct. Rec. 41, Exhibit F. There can also be no dispute that crimes of moral turpitude are grounds for excludabilty. Section 212(a)(2)(A)(I); 8 U.S.C. § 1182(a)(2)(A)(I); *Cabasug v. I.N.S.,* 847 F.2d 1321, 1326 (9th Cir. 1988) ("crimes of moral turpitude are ground for exclusion for which § 1182(c) [Section 212(c)] discretion is available.") As a result, the Defendant would have satisfied or could likely have satisfied all four requirements to make himself eligible for discretionary waiver of deportation.

The deportation cases cited by the Government where the court found no comparable ground in the exclusion statute, making the aliens ineligible for a waiver, are all distinguishable from this case. The issue in those cases was not the failure of the IJ to advise the alien of a waiver and in none was the alien's ground for deportation the same as this Defendant's Section 241(a)(2)(A)(ii) (two crimes of moral turpitude). *See, e.g. Komarenko v. I.N.S.*, 35 F.3d 432 (9th Cir. 1994) (deportation pursuant to 8 U.S.C. § 1251(a)(2)(C) following conviction of assault with a deadly weapon); *Cabasug v. I.N.S.*, 847 F. 2d 1321 (9th Cir. 1988) (deportation pursuant to 8 U.S.C. § 1251(a)(14) after

ORDER - 7

conviction for carrying a sawed off shot gun); *In Re Leroy Nelson Blake*, 23 I. & N. Dec. 722 (BIA 2005) (deportation pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) after conviction of sexual abuse of a minor, an aggravated felony)*; Matter of Wadud*, 19 I. & N. Dec. 182 (BIA 1984) (deportation pursuant to 8 U.S.C. § 1251(a)(5) because he had been convicted of a violation of 18 U.S.C. § 1546); *Matter of Granados,* 16 I. & N. Dec. 726 (BIA 1979) (deportation pursuant to 8 U.S.C. § 1251(a)(14) after conviction of possession of an unregistered sawed-off shotgun); *Matter of Hernandez-Casillas*, 20 I. & N. Dec. 262 (BIA 1990) (A.G. 1991) (deportation pursuant to 8 U.S.C. § 1251(a)(2) following conviction for entry without inspection).

Prejudice Due to Defect.  To succeed in showing prejudice an alien does not have to prove that he actually would have been granted relief, but only that he had a "plausible" ground for relief from deportation. *Arrieta,* 224 F.3d at 1079; *Jimenez-Marmolejo*, 104 F.3d at 1086.  If the Defendant had appealed the IJ's decision, enough time would likely have passed so that he would have satisfied the seven year requirement for domicile.  A discretionary waiver of deportation may have been granted because of his parents' (both of whom were legal permanent residents) dependence on his financial and emotional support.  Because he could plausibly have obtained relief, the IJ's failure to inform him of the possibility of relief from deportation resulted in prejudice.

### III. CONCLUSION

The Defendant has satisfied his burden to show a due process violation and prejudice as a result of the violation.  The IJ was required to advise the Defendant of the possibility that he could obtain a Section 212(c) waiver from deportation and give him the opportunity to develop the issue.  *Arrieta,* 224 F.3d at 1079, *quoting Moran- Enriquez v. INS,* 884 F.2d 420, 422-23 (9th Cir. 1989).  The Government has failed to prove by clear and convincing evidence that the Defendant's waiver of his appeal rights was knowing and voluntary.  Without information about the potential relief available to him if he could satisfy the seven

years of domicile, his waiver of his right to appeal was not knowing and voluntary. Accordingly,

**IT IS ORDERED** that:

1. The Defendant's Motion to Dismiss, filed April 17, 2007, **Ct. Rec. 40**, is **GRANTED**.

2. The Indictment filed November 9, 2005, **Ct. Rec. 1**, is **DISMISSED WITH PREJUDICE**.

3. The Government's Supplement, filed May 17, 2007, **Ct. Rec. 54**, is **STRICKEN** as it is not in compliance with Local Rule 7.1. Defendant's Supplement filed May 17, 2007, **Ct. Rec. 55**, was filed with leave of Court to provide the Defendant with an opportunity to address the Government's Supplement. As the Court will not consider the Government's Supplement, it will also not consider the Defendant's Supplement (Ct. Rec. 55) and it shall also be **STRICKEN**.

4. All pending deadlines and hearings, including the June 4, 2007 final pretrial conference and trial date, are **STRICKEN.**

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 23rd day of May, 2007.

05-22

                s/ Wm. Fremming Nielsen
                WM. FREMMING NIELSEN
        SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 9